Paul A. Lax (SBN 94090)
5885 W. Vereda Del Coyotito
Tucson, Arizona 85745
Telephone: (213) 369-8454
Facsimile: (213) 617-1474
plax0611@gmail.com

Attorney for Plaintiff Carl Killebrew

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARL KILLEBREW,<br>Plaintiff,<br>vs.<br>TOPBUILD, INC. AMERICAN NATIONAL INSULATION; INC, COAST BUILDING PRODUCTS, INC. and DOES 1 through 10,<br>Defendants. | Case No.: **5:23-cv-02427-MRA (ASx)**<br><br>OPPOSITION TO ANI'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Carl Killebrew, submits this Opposition to ANI's Motion for Summary Judgment.

**INTRODUCTION**

First, ANI's motion is based largely on pieces of deposition testimony without putting those in context.

Second, ANI's motion is based largely on a May 25, 2022 document, prepared by ANI. This document, among other things, is internally contradictory. Ambiguities, such as in this document, are construed against the author. In addition, extrinsic evidence is permitted to explain the intent of such a document.

# TABLE OF CONTENTS


Page

I. INTRODUCTION.........................................................1

II. FACTS AND BACKGROUND.........................................2

III LEGAL ARGUMENT.....................................................3

Issue No. 1.........................................................3

Issue No. 2.........................................................4

Issue No. 3.........................................................5

Issue No. 4.........................................................6

Issue No. 5.........................................................8

Issue No. 6.........................................................9

Issue No. 7.........................................................10

Issue No. 8.........................................................12

Issue No. 9.........................................................13

Issue No. 10.......................................................15

Issue No. 11.......................................................16

Issue No. 12.......................................................18

Issue No. 13.......................................................18

IV CONCLUSION...........................................................20

# TABLE OF AUTHORITIES

**Pages**

## CASES

*Watson,*
487 U.S., at 986, 108..........2

*Burdine,*
450 U.S., at 255, n. 8, 101 S.Ct. 1089..........2

*Murray v. UBS Sec., LLC,*
601 U.S. 23, 37 (2024)..........3

*United Paperworks Int'l Union, AFL-CIO v. Misco, Inc,.*
484 U.S. 29, 44, (1987)..........5

*Lamps Plus, supra,*
139 S.Ct. at p. 1417..........7, 13

*Westmoreland v.Kindercare Educ. LLC,*
90 Cal. App.5th 967, 978 (2023)..........7, 13

*Pacific Gas & Electric, supra,*
69 Cal.2d at pg. 37, 69 Cal. Rptr. 561, 442 P.2d 641..........7, 13

*Dore v. Arnold Worldwide, in.*
(2006) 39 Cal.4th 384, 391, 46 Cal Rptr.3d 668, 139 P.3d 56..........7, 13

*Wolf v. Walt Disney Pictures & Television,*
162 Cal. App 4th 1107, 1126, 76 Cal. Rptr. 3d 585, 602 (2008)..........8, 13

*Morey v. Vannucci*
(1998) 64 Cal. App.4th 904, 912, 75 Cal. Rptr. 2d 573..........9

*Dore v. Arnold Worlwide, Inc.,*
39 Cal. 4th 384, 391 (2006)..........9

*Miller,*
797 F.2nd at 731-32..........11

## TABLE OF AUTHORITIES
(continued)

**Pages**

*Kama v. Mayorkas,*
107 F.4th 1054, 1059 (9th Cir. 2024)....11

*Yau v. Allen,*
(2024) 229 Cal.App.4th 144, `54....11

*Nosal-Tabor v. Sharp Chula Vista Med. Ctr.,*
239 Cal. App. 1224, 1234-35 (2015)....11
*Engalla,*
15 Cal. 4th at 977....16

*DZ Rsrv. V. Meta Platforms, Inc.,*
96 F.4th 1223, 1237-38 (9th Cir. 2024)....17

*Vasquez v. Superior Court,*
(1971) 4 Cal.3d 800, 814, 94 Cal. Rptr. 796, 484 P.2d 964....17

*Barnhouse v. City of Pinole,*
(1982) 133 Cal.App.3d 171, 188 fn. 5, 183 Cal. Rptr. 881....17

*Security Pac. Nat'l. Bank v. Associated Motor Sales,*
(1980) 106 Cal. App.3d 171, 179-80. 165 Cal. Rptr. 38....17

*Engalla v. Permanente Med. Grp.,*
15 Cal. 4th 951, 977, 938 P.2d 903, 919 (1997)....18

**STATUTES**

28 U.S.C. sec. 2072(b)....17

Cal. Civ. Code Sec. c of Sec. 3294 (West)....19

Third, ANI has frequently referred to the fact that Mr. Killebrew is Mr. Sirls' son-in-law. That is true. If this is an attempt to challenge Mr. Sirls' honesty, it is insulting and unwarranted. Also, ANI ignores the facts which establish the steps taken to train Mr. Killebrew for his job in the insulation industry.

Fourth, it is obvious that ANI's counsel is relying entirely on information provided by Mike Fidone.

However, the most important thing is the lack of evidence to support the Motion. ANI submits two Declarations in Support of its Motion, both from people with no direct knowledge of the events relevant to the matter. There are no declarations from Mr. Fidone, Ms. Hauger or anyone else with first-hand knowledge of the facts relevant to this action.

ANI's Motion does not describe all the relevant events in the recounting of Killebrew's attempt to correct the job cost records and be paid his proper commissions.

ANI's introduction to its motion reads like a sophomore essay. It was apparently drafted to describe ANI's illusion of the matter. As it is not supported by any facts, it should be ignored.

In its Motion, ANI argues that no "public policy" is present in the situation. However, public policy can be found in statutes. In this instance, the United States Supreme Court describes public policy in the Sarbanes-Oxley legislation. The Court explains what the public policy relevant to this case establishes.

> Here, the burden-shifting framework worked as it should to " 'sharpen the inquiry into the elusive factual question of intentional discrimination.' " *Watson*, 487 U.S., at 986, 108 (quoting *Burdine*, 450 U.S., at 255, n. 8, 101 S.Ct. 1089). The jury heard both sides of the story. It then determined that Murray had shown that his protected activity was a contributing factor in his firing while UBS had not shown that it would have taken the same action in

> the absence of his protected activity. That burden shifting—and not some separate, heavier burden on the plaintiff to show "retaliatory intent"—is what the statute requires.[2]
>
> *Murray v. UBS Sec., LLC*, 601 U.S. 23, 37 (2024)

In this case, which is not based on the Sarbanes-Oxley statute, the question of intentional discrimination is answered by the sequence of events leading to Killebrew's termination. However, that legislation does comprise a part of public policy.

**ANI'S NOTICE OF MOTION STATES THIRTEEN ISSUES**

ANI identifies the Causes of Action which it claims are not supported by any facts. These claims will be addressed in the order they are stated.

First Cause of Action – Wrongful termination

Issue No. 1

> Plaintiff cannot maintain a claim against ANI for wrongful termination because Plaintiff's litigation conduct demonstrates his knowledge that the claim lacks merit.

**Examination of Issue No. 1**

This is the simplest to refute and perhaps an indication of weakness of the entire Motion. This claim is nonsense. It is apparently based on an e-mail sent to Plaintiff's counsel by one of the attorneys representing ANI. ANI bases its assertion that there was an intent to dismiss and cause of action on speculation by one of the attorneys representing ANI.

> Hi Paul,
>
> On July 25, 2024, you provided us another proposed Furst Amended Complaint. ***Based on our analysis it appears the purpose of the proposed First Amended Complaint would be to dismiss the Wrongful Termination***

> ***cause of action.*** Procedurally, it likely makes more sense for the parties to enter into a stipulation to dismiss the Wrongful Termination cause of action. We can draft a stipulation if you agree with this approach. Let us know. Thanks. (Emphasis added.)
>
> **Joseph Halabrin | Perkins Coie LLP**
>
> **ASSOCIATE**

There is a substantial difference between what ANI characterizes as a demonstration of the Plaintiff's knowledge of lack of merit in the claim and the "analysis" of one of the attorneys at Perkins Coie who is defending ANI. To claim that the conclusion of one of the several attorneys working on this case offered his "analysis" concluding that Plaintiff's counsel has acknowledged that the claim has no basis; is nonsense. As stated above, this assertion is based on an opinion of one of the attorneys involved in defending ANI. The stated basis offered by ANI, that the matter cannot proceed because the Plaintiff knows it has no merit is his own conclusions. The cited "evidence" for its assertion is the "analysis" of one of the attorneys defending this matter. This Issue requires no more discussion.

<u>Issue No. 2</u>

> Plaintiff cannot maintain a claim against ANI for wrongful termination because Plaintiff cannot establish that ANI violated any public policy by terminating Plaintiff's employment.

**<u>Examination of Issue No. 2</u>**

Public Policy can be expressed in statutes.

> As we see it, the formulation of public policy set out by the Court of Appeals did not comply with the statement that such a policy must be "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' "

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 44, (1987)

Contrary to ANI's motion, a public policy on the issue of termination can be found in the Sarbanes-Oxley legislation. In this instance, Mr. Killebrew was pursuing an issue concerning someone in ANI management, probably Mike Fidone, adding false charges to Mr. Killebrew's projects. The termination of Mr. Killebrew was a violation of public policy as described in a statute.

This argument ignores the fact that public policy can be found in the language of statutes. In this case, the statute expressing that policy is the Sarbanes-Oxley legislation. Mr. Killebrew had learned of misconduct by ANI employees, specifically, adding false costs to job cost reports. He reported this to his supervisors. They said things would be corrected, but they had not been by the time of his termination. ANI's Issue 2 is without merit.

Issue No. 3

Plaintiff cannot maintain a claim against ANI for wrongful termination because ANI terminated Plaintiff for permissible business reasons as part of a layoff and due to his Performance deficiencies.

**Examination of Issue No. 3**

This position statement will be challenged, and refuted, by a review of the dates of complaints, to whom the complaints were made, and the proximity of dates resulting n Mr. Kille4brew's termination. Essentially, his termination was the result of his pursuit of his unpaid commissions.

There is significant evidence that Mr. Killebrew was not terminated because of "performance deficiencies." The timing of his termination, compared to an exchange of e-mails between he and Sandra Hauger shows the true reason for his termination. Attached to this Opposition are the e-mails in the last few days of Mr. Killebrew's employment with ANI. (Exhibit B to Decl. of Killebrew) The sequence is clear

evidence that the termination was due to Mr. Killebrew's continuing efforts to recover commissions owed.

Having taken his inquiry to Mr. Fidone and Mr. Morris, Mr. Killebrew next took his issue of unpaid commissions to Ms. Hauger in the HR department at the Florida headquarters of ANI. He sent his first e-mail to Ms. Hauger on March 9, 2023. That e-mail was responded to on March 10, 2023. (Exhibits C and D to Decl. of Killebrew).

In support of the conclusion that Mr. Killebrew was terminated for pursuing payment of his commissions is the Declaration of David DeRidder. Mr. DeRidder was sales manager and, in that position, was the immediate supervisor of Mr. Killebrew at some time during Mr. Killebrew's employment. In that Declaration, Mr. DeRidder states that one of the reasons he left the employment at ANI was the harassment of Mr. Killebrew. It also states that he was asked by ANI personnel, Denise Hollenbeck, to give Mr. Killebrew a bad review. (Dec. of DeRidder, para. 9) That Declaration also states that Mr. Killebrew was performing his duties well. (Decl. of DeRidder, Para. 7)

Issue number 4:

> Plaintiff cannot maintain a claim against ANI for breach of contract for any period prior to May 26, 2022 because he released those claims when he signed a settlement agreement.

**Examination of Issue No. 4**

There is a very basic problem with the 'release." The language in the second paragraph conflicts with the language of the fourth paragraph. The second paragraph states:

> Your signature below is to recognize that his is a one-time extraordinary payment ***separate*** from and in addition to your normal compensation. (Emphasis added)

In the fourth paragraph is the following language:

> … your waiver and release of any and all employment related claims … all claims … breach of contract … your normal compensation (I. E., Base salary and or commission".

If the payment is separate, as stated in the second paragraph of the document, it conflicts with the fourth paragraph. If the agreement is separate from Mr. Killebrew's regular compensation it must conflict with the provision that provides that it is a waiver of commission claims.

These provisions, in a document prepared by ANI, conflict. If the agreement is about a one-time payment extraordinary claim, and further down the page states it will release "any and all employment related claims, … ." it certainly contains conflicting statements.

> "At that point, *contra proferentem* resolves the ambiguity against the drafter based on public policy factors, primarily equitable considerations about the parties' relative bargaining strength." (*Ibid.*)(*Lamps Plus*, *supra*, 139 S.Ct. at p. 1417.)
>
> *Westmoreland v. Kindercare Educ. LLC*, 90 Cal. App. 5th 967, 978 (2023)

Equitable considerations about the bargaining strength of the parties is simple; a multi-million dollar corporation and an employee. More important, this document, titled One-Time payment, was only intended to cover three jobs. This payment was the result of the inquiry into three jobs from 2019. (Decl. of Ken Sirls, para. 10; Killebrew Decl. Para. 23)

> When the meaning of the words used in a contract is disputed, the trial court engages in a three-step process. First, it provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. (*Pacific Gas & Electric, supra,* 69 Cal.2d at p. 37, 69 Cal.Rptr. 561, 442 P.2d 641; *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391, 46 Cal.Rptr.3d 668, 139 P.3d 56.)

*Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126, 76 Cal. Rptr. 3d 585, 602 (2008), as modified on denial of reh'g (June 4, 2008)

ANI's motion offers no evidence concerning the intent of the subject document. There is one interesting provision in that document, prepared by ANI.[1]

Issue no. 5

Plaintiff cannot maintain a claim against ANI for breach of contract because he cannot satisfy the elements of the claim, including but not limited to, because he cannot establish the existence of a contract or breach.

**Examination of Issue No. 5**

When he was hired by ANI, he received a commission chart. **(Exhibit A to Decl. of Killebrew)** That chart explained the commissions he could receive if his projects achieved a 25% direct margin. He also signed ANI's confidentiality agreement. Contracts need not be written.

The definition of a contract is provided in the California Civil Code, section 1550.

It is essential to the existence of a contract that there should be:

1. Parties capable of contracting;
2. Their consent;
3. A lawful object; and,
4. A sufficient cause or consideration.

These elements are satisfied in this case. First, the parties are certainly capable of contacting. Both parties consented to the terms of employment, the confidentiality agreement, the commission chart defining the commission portion of Mr. Killebrew's compensation, and the consideration from Mr. Killebrew was performing the duties of an estimator/project manager.

[1] The first paragraph of ANI's memo is: We at American National Insulation, Inc. appreciate your contributions to the team, especially during the last two months.

Although ANI cites the May 25, 2022 document as controlling, there is more to consider.

> Accordingly, "[e]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912, 75 Cal.Rptr.2d 573.) "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible."
>
> *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006)

ANI offers no evidence concerning the intent of the May 25th document. In fact, the May 25, 2022 document only covered three jobs from 2019 for which the commissions had not been paid. (Decl. of Killebrew, Para. 121; Decl. of Sirls, Para. 10) The $30,000 amount was for only those three projects.

<u>Issue 6</u>

Plaintiff cannot maintain a claim against ANI for breach of contract because Plaintiff's damages are wholly speculative, and he cannot demonstrate appreciable and actual damage.

<u>**Examination of Issue No. 6**</u>

The damage is hardly speculative. Mr. Killebrew has identified costs shown on job cost reports as not belonging to that job. (Decl. of Killebrew, Para. 18) When false costs are added to a job, the direct margin decreases, thereby reducing or eliminating Mr. Killebrew's commissions.

Mr. Sirls has reviewed the job cost reports and identified many costs which could be shown to include false costs, just by examining the reports. (Decl. of Sirls, Para. 11)

Issue 7

Plaintiff cannot maintain a claim against ANI for breach of contract because Plaintiff's employment with ANI was at-will and Plaintiff does not have any evidence that the parties entered into any agreement that altered the at-will status.

**Examination of Issue No. 7**

ANI is correct in stating that Mr. Killebrew's employment with ANI was at-will, but does not mention that there are circumstances in which an at-will employee cannot be terminated without cause. When the termination violates public policy, the at-will employee cannot be terminated unless a valid reason exists.

Public Policy can be found in statutes. The Sarbanes-Oxley Act shows public policy that protects employees, including those with at-will employment, from being terminated for reporting issues to superiors. In this case, Mr. Killebrew was seeking to have false costs, which had been added to his projects by someone at ANI, removed.

Mr. Killebrew was pursuing the issue of the false costs through executives of ANI. The pursuit ended at the head of HR for ANI, Sandra Hauger. And there is ample evidence to support the fact that the real reason for his termination was for continuing to pursue his commissions. Evidence of the real reason that ANI terminated Mr. Killebrew's employment was his continued pursuit of his commissions, which had been unjustifiably removed by false costs added to the reports on his projects.

The temporal proximity of the exchange of e-mails between Sandra Hauger and Mike Fidone shows the real reason that Mr. Killebrew was terminated; he would not stop pursuing payment of his commissions.

The chronology of the e-mail exchanges shows the real reason for Mr. Killebrew's termination, and it was not poor performance. On March 9, a Thursday, Mr. Killebrew sends an e-mail to Sandra Hauger. (Exhibit B to Decl. of Killebrew) Ms. Hauger responded on March 10, a Friday, suggesting that Mr. Killebrew talk to Mike

Fidone. California law requires that employees who are terminated must be paid at the time of termination. A check was sent from Florida on Monday. The termination was on Tuesday, the 14th. Since the check had to come by overnight mail, it would have been drawn on Monday, the 13th. The proximity of dates supports the fact that the termination was because of his continued efforts to be paid his commissions, not for unsatisfactory performance or a reduction in force. In summary, only 5 days passed between Mr. Killebrew's March 9 e-mail to Ms. Hauger and the March 14 termination. Two of those days are Saturday and Sunday.

> Temporal proximity can support both a *prima facie* case of retaliation and a showing of pretext. *Miller*, 797 F.2d at 731-32. *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024)

The space of five days between Mr. Killebrew's message about unpaid commissions and his termination establishes the fact that he was terminated for pursuing his commissions and reporting that his immediate supervisor was not helping with the problem.

> "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." (*Yau v. Allen* (2014) 229 Cal.App.4th 144, 154).

*Nosal-Tabor v. Sharp Chula Vista Med. Ctr.*, 239 Cal. App. 4th 1224, 1234–35 (2015) Each of the elements is present in this case.

Killebrew, having received no help in correcting the false costs that appeared on his projects, took steps to pursue what he had discovered, false costs that were added to the reports for his projects. He had been told by Mr. Fidone, the Division manager for the Corona Division, that the job cost reports would be corrected. However, that

did not happen. When that step did not result in any corrections, he took the issue to the next level, to the District Manager, Mark Morris. Mr. Morris told Mr. Killebrew that the false costs would be removed from the job cost reports on Mr. Killebrew's projects. As of the date of his termination, they were not.

Issue 8

> Plaintiff cannot maintain a claim against ANI for fraud for any period prior to May 26, 2022 because he released those claims when he signed a settlement agreement.

**Examination of Issue No. 8**

This Issue identified in ANI's motion for summary judgment, is also based on the March 25, 2002 document. The facts concerning this issue are the same as for Issue No. 4.

There is a very basic problem with the 'release." The language in the second paragraph conflicts with the language of the fourth paragraph. The second paragraph states:

> Your signature below is to recognize that his is a one-time extraordinary payment ***separate*** from and in addition to your normal compensation. (Emphasis added)

In the fourth paragraph is the following language:

> … your waiver and release of any and all employment related claims … all claims … breach of contract … ."

If the payment is separate, as stated in the second paragraph of the document, it conflicts with the fourth paragraph. If the agreement is separate from Mr. Killebrew's regular compensation it must conflict with the provision that provides that it is a waiver of commission claims.

These provisions, in a document prepared by ANI, conflict. If the agreement is about a one-time payment extraordinary claim, and further down the page states it will

release "any and all employment related claims, . . . ." It certainly contains conflicting statements.

> "At that point, *contra proferentem* resolves the ambiguity against the drafter based on public policy factors, primarily equitable considerations about the parties' relative bargaining strength." (*Ibid.*)(*Lamps Plus*, *supra*, 139 S.Ct. at p. 1417.)
>
> *Westmoreland v. Kindercare Educ. LLC*, 90 Cal. App. 5th 967, 978 (2023)

Here, the bargaining strength of Mr. Killebrew is substantially less than the bargaining strength of ANI.

More important, this document, titled One-Time payment, was only intended to cover three jobs. This payment was the result of the inquiry into three jobs from 2019. (Decl. of Ken Sirls, para. 10; Killebrew Decl. Para. 23)

> When the meaning of the words used in a contract is disputed, the trial court engages in a three-step process. First, it provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. (*Pacific Gas & Electric, supra,* 69 Cal.2d at p. 37, 69 Cal.Rptr. 561, 442 P.2d 641; *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391.)
>
> *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126, (2008), as modified on denial of reh'g (June 4, 2008)

The declarations state that the document in question was only intended to cover three projects from 2019. It was not intended to apply to anything else.

Issue 9

> Plaintiff cannot maintain a claim against ANI for fraud because he cannot demonstrate ANI made a false representation.

**Examination of Issue No. 9**

Although it is most likely that the false costs were added to the job cost reports by Mr. Fidone, it is certain that they were entered by someone at ANI. Those reports were created and maintained by ANI's accounting department.

This claim, that Mr. Killebrew cannot show a false representation, cannot be given any credit. In Mr. Killebrew's declaration he testifies to several things that contradict this claim by ANI. In fact, ANI personnel told Mr. Killebrew that the false costs would be removed.

> I was assured by ANI managers that they were going to delete the incorrect entries. (Decl. of Killebrew, Para. 15).

One does not delete "incorrect entries" unless they admit that false costs were added to his job cost reports.

> In fact, I later learned that they were not corrected. (Killebrew Decl. Para 19) I pointed some of them out to Mr. Fidone and he assured me he would have those false costs removed. (Killebrew Decl. Para. 19)

One does not agree to delete "false costs" unless they admit that false costs were added to the job report.

> No one at ANI to whom Mr. Killebrew questioned about his commissions ever denied that there were "false costs" on the job reports. (Killebrew Decl. Para. 25)

Over all the months that Mr. Killebrew questioned the underpaid commissions, and discussed the consistent under-payment, not one of the ANI personnel he approached denied any of his statements. ANI has even failed to submit a declaration by Mr. Fidone, an ANI employee, and the person who was directly involved in the facts relevant to the complaints of Mr. Killebrew. The only Declarations submitted in an attempt to end the case by Summary Judgment were those of the lead defense attorney and an ANI employee, never involved with the

underpaid commissions issue, submitting documents. The most revealing of missing evidence to support the Motion is the absence of a Declaration from Mike Fidone.

Mr. Sirls reviewed the reports produced by ANI and discovered many entries on many jobs that could only have been false. (Sirls Decl. Para. 13)

The frequency of the false costs being added to job cost reports indicates these entries were not accidental. They were intentionally added to reduce Mr. Killebrew's direct margin and therefore his commissions. Such a reduction would make the Corona branch appear more profitable. That would likely lead to a bonus for Mr. Fidone as manager. If you pay the employees less, you realize larger profits.

The number of false costs added to Mr. Killebrew's projects indicate that they are not accidents, but intentional acts.

Issue No 10

Plaintiff cannot maintain a claim against ANI for fraud because he cannot demonstrate ANI knowingly made a false representation with the intent to deceive.

**Examination of Issue No. 10**

Mr. Fidone, ANI's Division Manager, had the authority to make changes to the job cost reports. (Declaration of Ken Sirls, Para. 14). The sheer number of the false costs shows that these were not accidents nor made without the "intent to deceive." The deception was Mr. Fidone's telling Mr. Killebrew that his projects were not profitable, therefore he would not receive commissions on those projects. During virtually the entire time Mr. Killebrew was employed by ANI, he did not have routine access to the TruTeam Job Cost Reports. (Decl. of Killebrew, Para. 19 & 22)

When Mr. Killebrew approached Mr. Fidone about his underpaid commissions, he was shown some job cost reports. Those reports showed false costs, some of which were immediately recognized by Mr. Killebrew. The reports were maintained by ANI's accounting department. The information on those reports was provided by Mr. Fidone. The frequency of the false costs (Decl. of Sirls, Para. 15) shows that they were intentional entries and false information added those costs to deceive Mr. Killebrew and intended to reduce or eliminate his commissions.

Issue 11

Plaintiff cannot maintain a claim against ANI for fraud because he cannot establish justifiable reliance.

**Examination of Issue no. 11**

Mr. Killebrew did rely, for a time, on the reports which overstated expenses and, in some cases, understated the revenue. (Decl. of Killebrew, Para. 16 & 21) As explained in his Declaration, he accepted the explanations, relying on statements made by such a large corporation with accounting departments responsible for entering the information about the projects. Much of that information was false, but it was certainly reasonable for him to accept it at the time. Case law supports that conclusion.

> Meta finally argues that the Rules Enabling Act prohibits application of California's presumption of reliance here. The Rules Enabling Act instructs that rules of procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Meta argues that application of the presumption of reliance amounts to lessening a plaintiff's burden of proving reliance in a class action case. ***However, California's presumption of reliance also applies in individual fraud actions.*** *Engalla*, 15 Cal. 4th at 977. Failing to apply the presumption of reliance would thus amount to abridging a

> substantive right, as the presumption would apply in individual cases but not in federal class actions. Contrary to Meta's contention, the Rules Enabling Act *requires* application of California's presumption of reliance.
>
> *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1237–38 (9th Cir. 2024)

The presumption of reliance has also been recognized in the California Supreme Court.

> Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. (*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 814, 94 Cal.Rptr. 796, 484 P.2d 964; see also 12 Williston on Contracts (3d ed.1970) § 1515, p. 480; Rest.2d, Contracts, § 167.) A misrepresentation is judged to be "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question" (Rest.2d Torts, § 538, subd. (2)(a); see also *Barnhouse v. City of Pinole* (1982) 133 Cal.App.3d 171, 188, fn. 5, 183 Cal.Rptr. 881), and as such materiality is generally a question of fact unless the "fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." (Rest.2d Torts, § 538, com. e, p. 82.) Thus, the Engallas need only make a showing that the misrepresentations were material, and that therefore a reasonable trier of fact could infer reliance from such misrepresentations, in order to survive this summary-judgment-like proceeding, absent evidence conclusively rebutting reliance. (Cf. *Security Pac. Nat. Bank v. Associated Motor Sales* (1980) 106 Cal.App.3d 171, 179–180, 165 Cal.Rptr. 38 [presumption which shifts the burden of proving evidence entitles plaintiff to summary judgment if defendant fails to produce evidence to rebut the presumption].)

*Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977, 938 P.2d 903, 919 (1997), as modified (July 30, 1997)

Certainly, the misrepresentation of the costs on the job cost reports is material, as it determines the commission due. ANI's Motion must be denied when there are such clear statements of Federal and State law on the subject of reliance.

Issue No. 12

Plaintiff cannot maintain a claim against ANI for fraud because he cannot establish resulting damages.

**Examination of issue 12**

This argument by ANI ignores the fact that Mr. Killebrew's supervisors admitted that false costs were added to his TruTeam Job Cost Reports. (Decl. of Killebrew, Para. 18 & 19) False costs reduce or eliminate the direct margin. Reduction of the direct margin directly effects the commissions. Also, *none of the ANI personnel that he approached denied that those costs should be removed from the reports on Mr. Killebrew's projects.*

Issue No. 13

Plaintiff cannot recover punitive damages in this action because the conduct alleged against ANI does not constitute oppression, fraud or malice.

**Examination of Issue 13**

Punitive damages are appropriate in circumstances such as those encountered by Mr. Killebrew. At page 29 of its Motion for Summary Judgment, ANI cites a statute. It states in relevant part:

**§ 3294. Exemplary damages; when allowable; definitions**

(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

(b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

(c) As used in this section, the following definitions shall apply:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Cal. Civ. Code § 3294 (West)

At page 29 of its Motion, ANI makes this statement:

"Here, there is a total absence of evidence from which "oppression, fraud or malice" reasonably could be inferred."

It is the province of the Court to determine if the conduct of ANI, up to the level of the person in charge of the HR department, does or does not meet the requirements of section c of section 3294 of the Civil Code. Plaintiff submits that the instances of

misrepresentation, fraud and harassment satisfy the requirement to show malice, oppression and fraud justify punitive damages.

**Why did Mr. Killebrew stay at ANI during the harassment?**

This is an obvious question raised considering his treatment. There is also an answer. He liked the work and was good at it. He liked the people he worked with. He liked working with clients to develop strong relationships. Except for Mr. Fidone, and some of the unrealistic demands made by Mr. Fidone and Ms. Hollenbeck, it was his job of choice. (Decl. of Killebrew, Para. 32) This is shown by the fact that he now works for another company doing the same type of work as he did at ANI. (Decl. of Killebrew, Para. 33)

**Why was Mr. Killebrew Subjected to the Harassment?**

It is difficult to determine someone's motivation for actions. However, an explanation is offered in an e-mail sent by Mr. Killebrew to Sandra Hauger.

> The latest form of harassment is Michael Fidone conversation with the field crews were Michael told them that he knows Ken Sirls is going to start up another business doing insulation and is helping our competitors(CR insulation specifically). He also stated that top build is "taking necessary steps to prepare for that to happen". Am I one of these necessary actions top build is taking? Forcing unrealistic targets to be met and to work 80 hour per week? At this point, I don't even feel comfortable speaking to Michael because how dishonest and the manipulation of the truth is conveyed on paper. He gets upset and speaks to me like an inferior child, (Dave Deridder has been a part of some of these conversations and contest). He has also spoke down to me in front of the other estimators in the office. This brings a heavy weight dealing with this everday.
>
> (Decl. of Killebrew, Para. 26, Exhibit A)

This is not true. Mr. Sirls had no intention of doing anything other than retire. (Decl. of Sirls, Para. 19) But it does provide some evidence of the reasons for the

poor treatment of Mr. Killebrew, including adding false costs to his job reports. Mr. Sirls resigned from ANI on April 22, 2022. He has not and does not intend to start another insulation company. (Decl. of Sirls, Para. 15.) However, if ANI was assuming that this statement, that Mr. Sirls was planning to start another insulation company was true, the concern over Mr. Killebrew leaving and taking clients with him could explain his mistreatment.

**Conclusion**

ANI's Motion for Summary Judgment fails to establish any basis for ending this case by a Summary Judgment. The absence of any evidence from the persons who were involved in the events at issue tells a great deal about the "evidence" on which ANI relies.

The Motion should be denied.

Date: October 23, 2024

By: ______________________
Paul A. Lax
Attorney for Plaintiff, Carl Killebrew

**Certificate of Compliance**

The undersigned, counsel of record for Plaintiff, Carl Killebrew, certifies that this brief contains 5766 words which complies with the word limit of Local Rule 11-6.1.

Dated: October 23, 2024

By: ______________________

Paul A. Lax
Attorney for Plaintiff, Carl Killebrew