**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

CARL KILLEBREW,

Plaintiff,

v.

TOPBUILD, INC., ET AL.,

Defendants.

Case No. 5:23-CV-02427-MRA-AS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [37]**

Plaintiff Carl Killebrew, a former employee of Defendant American National Insulation, Inc. ("ANI"), alleges that ANI wrongfully terminated him, breached his employment contract, and committed fraud after he complained about unpaid commissions for his projects. Before the Court is ANI's Motion for Summary Judgment as to all claims. ECF 37. The Court read and considered the moving, opposing, and reply papers and held a hearing in which the parties presented their oral arguments. ECF 61. For the reasons stated herein, the Court **GRANTS** the Motion.

//

# I. BACKGROUND

## A. Factual Background[1]

### *1. Hiring, Duties, and Settlement Agreement*

ANI is an insulation installer in the commercial building industry. ECF 37-1 at 8. On or about February 24, 2018, ANI hired Plaintiff as an estimator in its Corona, California branch. RSGD ¶ 1, 11. Kenneth Sirls is Plaintiff's father-in-law and was ANI's division manager when Plaintiff was hired to work at ANI.[2] *Id.* ¶¶ 2, 10. Plaintiff initially reported to Sirls as his direct manager and to Allan Emby, who became division manager in approximately 2019. *Id.* ¶ 10. After Sirls retired in April 2022, Dave DeRidder became Plaintiff's direct supervisor, and Michael Fidone became the division manager. *Id.* ¶¶ 13, 46.

Plaintiff was trained as an estimator and project manager at ANI. *Id.* ¶ 20. In these roles, Plaintiff estimated the costs of client projects and priced bids to be profitable. *Id.* ¶¶ 21-22. Plaintiff also visited project job sites and communicated with the foremen, superintendents, and production managers regarding any changes to the budget, and

---

[1] Unless otherwise indicated, the facts set forth in this section are taken from ANI's Response to Statement of Genuine Disputes of Material Facts ("RSGD"). ECF 46-3. District courts are not required to make findings of fact on a motion for summary judgment. Fed. R. Civ. P. 52(a)(3). Instead, the court "may assume that the material facts as claimed and adequately supported by the moving party are admitted existing without controversy except to the extent that such material facts are (a) included in the Statement of Genuine Disputes and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L-R 56-4; *see also* Fed. R. Civ. P. 56(c). The Court has reviewed and considered all evidence in the record, including declarations and documentary evidence. Plaintiff filed evidentiary objections, to which ANI responded. *See* ECF 54, 59. ANI also filed its own evidentiary objections. ECF 46-4, 49-2, 50. To the extent the Court relies on objected-to evidence, the relevant objections are overruled. The Court also addresses these objections below where necessary.

[2] As a new employee, Plaintiff signed a Non-Solicitation and Confidentiality Agreement, which established the at-will nature of Plaintiff's employment and provided that "[n]o modification, amendment, extension or waiver of this Agreement shall be binding unless in writing and signed by the parties." *Id.* ¶¶ 4-7.

engaged in sales, solicited new business, and budgeted and managed his projects. *Id.* ¶¶ 23-26.

ANI provided incentive compensation—*i.e.,* commissions—to its estimators to ensure accurate budget estimates. *Id.* ¶¶ 27-28. Projects with a direct profit margin of 25 percent or more would result in a commission of one percent of the direct margin. *Id.* ¶ 29. Projects with margins of 25 percent or less would not result in commissions. *Id.* ¶ 30. To view and calculate a project's direct margin, ANI maintained job status reports that included the monthly costs, revenues, billings, and direct margins of a project. *Id.* ¶¶ 34-35. Estimators received commissions monthly based on how the project was billed that month.[3] *Id.* ¶¶ 36-37.

In 2022, ANI noticed that Emby, the former division manager, had improperly calculated the direct margin for some of ANI's Corona branch projects. *Id.* ¶ 38. This led to an investigation into accounting irregularities at that branch. *Id.* ¶ 39. At the conclusion of the investigation, Sirls proposed a settlement payment for Plaintiff in the amount of $30,000 to cover unpaid commissions that were owed to Plaintiff. *Id.* ¶ 40. ANI offered Plaintiff $30,000 in exchange for his release of any claims against ANI through May 26, 2022. *Id.* ¶¶ 40-41. Plaintiff accepted the offer and signed the settlement agreement on May 26, 2022. *Id.*; ECF 37-4 at 99.

The settlement agreement's release provision states that "this is a one-time extraordinary payment separate from and in addition to your normal compensation," and that the release includes "all employment-related claims, claims of retaliation, claims based on breach of contract . . . tort, personal injury, invasion of privacy, violation of public policy, negligence or any common law, statutory, or other claims relating to employment

[3] During his deposition, Plaintiff was asked: "In your role, you have access to all the work orders, the job cost reports, up until March 2023, you saw everything, you had access to everything; right?" Pl. Depo. 142:13-16. Plaintiff responded, "Right." *Id.* Plaintiff contradicts his own testimony in his declaration, stating that he did not have access to any reports until March 2023 when ANI provided a brief training to show estimators and project managers how to access and review job cost reports in March 2023. Pl. Decl. ¶ 12.

with ANI through the date [May 26, 2022] signed below." *Id.* Plaintiff received an additional $7,000 bonus as compensation for his work during that time. RSGD ¶ 82; Pl. Depo. 22:24-23:10.

### *2. Commission Complaints*

After Plaintiff accepted the settlement payment, he continued to receive commissions for his projects. RSGD ¶ 44. Plaintiff's paystubs show that Plaintiff earned a total of $15,284 in incentive compensation from June 2022 through May 2023. *Id.* ¶ 45; ECF 37-4 at 121-126. Plaintiff does not dispute that he was *paid* $15,284 in commissions, but he argues that he *earned* substantially more for that period for which he was not paid. SUF ¶ 45.

Plaintiff complained to Fidone about his commissions in mid-August 2022. ECF 55 ("Pl. Decl.") ¶ 6. According to Plaintiff, Fidone explained to him that his projects did not merit commissions because they fell below the 25% direct margin. *Id.* Fidone then provided job cost reports for Plaintiff to review. *Id.* ¶ 7. Plaintiff reviewed the reports and identified products that did not belong in the reports. *Id.* Fidone assured Plaintiff that he would have the false costs removed; however, when Plaintiff inquired again, Fidone told him that "after 90 days, they can no longer go back and correct the job cost reports." *Id.* ¶¶ 7-8. It is undisputed that, after Plaintiff complained in August 2022, he never identified or investigated the amount he was owed. RSGD ¶ 81. Sirls states in his declaration that he reviewed the job cost reports and identified false costs, though Sirls does not specify which reports he reviewed, when he reviewed the reports, or what costs were false and why they were false. ECF 55-2 ("Sirls Decl.") ¶¶ 11-12.

Plaintiff did not have a written agreement entitling him to commissions for jobs that Sirls generated, nor is there a written agreement confirming that Plaintiff was entitled to the commissions that he claims he is owed. RSGD ¶¶ 72-73. Plaintiff testified that Regional Manager Mark Morris and Fidone had represented to him that he could have been denied commissions for projects for which he was not the primary generator, and not because there were false costs on the job status reports. *Id.* ¶ 74. Morris and Fidone also

informed him that they had discretion to decide who owned each project and how to split commissions. *Id.* ¶ 75. Plaintiff disputes that this was ANI's actual policy but does not cite to any evidence to refute it.

### *3. Job Performance*

In or around July 2022, DeRidder and Fidone informed all estimators at a sales meeting that they were required to bring in at least 20 bids a month and visit job sites at least twice each month. RSGD ¶ 55. Additionally, documents dated August 25, 2022, set forth ANI's "Goals & Expectations" for Plaintiff and several other employees. ECF 37-3 (O'Neill Decl.) ¶ 4; ECF 37-3 at 15-18. The Goals & Expectations document for Plaintiff noted that Plaintiff is "[w]ell organized [and] proficient with insulation take-offs." ECF 37-3 at 15. It set forth an action plan for him, expecting that he would write up a minimum of 5 quotes per week; contact new customers on a weekly basis; visit job sites/customers a minimum of 2 to 3 times per month; walk all new project job sites prior to start; forward all sales proposals to his manager daily; provide a follow up summary of sales weekly; and generate a minimum of $250,000 in sales per month. *Id.* The same requirements were largely set for other employees. *See id.* at 16-18.

ANI claims that Plaintiff's superiors were not satisfied with his performance, as demonstrated by Plaintiff's negative performance review. RSGD ¶ 47. It is undisputed, for example, that on one occasion, Plaintiff took a sick day and informed DeRidder that he was going to the dentist, but Plaintiff instead went to Disneyland. *Id.* ¶ 48. DeRidder and Fidone met with Plaintiff to counsel him about this issue. *Id.* ¶ 49. Plaintiff recognizes that DeRidder and Fidone were correct in being upset about this. *Id.* ¶ 50.

In September 2022, Plaintiff received his first negative performance review.[4] *Id.* ¶ 47; O'Neill Decl. ¶ 3; ECF 37-3 at 5-10. The performance review noted that Plaintiff

[4] ANI's briefing represents that this negative performance review was received in August 2022. The review itself is undated, but the O'Neill Declaration supporting the review states that the review is from the "September/October 2022 timeframe." O'Neill Decl. ¶ 3.

"Does Not Meet Expectations" for delivering results, does not "consistently document, communicate, address, or follow up on non-compliance issues," "is reluctant to implement changes," and "does not achieve outcomes using ethical and compliant needs." *Id.* ¶ 56; ECF 37-3 at 9. It further stated that Plaintiff "Partially Meets Expectations" in the areas of customer focus and teamwork. ECF 37-3 at 7-8.

On September 9, 2022, Plaintiff was placed on an initial Performance Improvement Plan ("PIP"). RSGD ¶ 58; ECF 37-3 at 11. The PIP stated that Plaintiff's office hours had been inconsistent, and hours spent away from the office were "often not productive or accounted for." RSGD ¶ 59; ECF 37-3 at 12. On August 18, 2022, Plaintiff left the office at 7:30 a.m. without requesting time off or logging onto his computer; the next day, he left the office at 11:30 a.m. and reported that he was on his way to meet with a client, who later confirmed he did not meet with Plaintiff.[5] RSGD ¶ 59; 37-3 at 12. According to the PIP, Plaintiff placed 10 bids in August 2022 and was managing four projects.[6] RSGD ¶ 60; ECF 37-3 at 12. It also stated that there had been several conversations with Plaintiff to reach out to customers to build relationships, visit job sites more frequently, and about consistency and accountability. RSGD ¶ 61; ECF 37-3 at 12.

The PIP warned that if Plaintiff did not significantly improve, ANI may terminate him. RSGD ¶ 62; ECF 37-3 at 12. Plaintiff entered a comment responding to ANI's asserted reasons for the PIP and disputing the accuracy of the information presented therein: he wrote that "[i]n the years I have been with this company all of my reviews have been great." ECF 37-3 at 11. He also responded that he never received guidelines regarding expectations, that he called and visited jobsites regularly, that he had exceeded

---

[5] In his unsigned declaration, Plaintiff disputed that he did not meet with a client that day, stating that he left the office for a meeting with a client who was not there when he arrived, and so he instead met with a different client. ECF 41-3 (Unsigned Pl. Decl.) ¶ 17. However, Plaintiff did not include this explanation in his subsequently filed signed declaration. As a result, the Court finds that this fact is not genuinely disputed.

[6] Plaintiff represents that this is incorrect, and that he instead had 10 projects to *manage*. *Id.* In support, Plaintiff cites to certain ANI documents, which were not filed with the Court. Therefore, the Court cannot consider this evidence.

his annual sales expectations, and that, on multiple occasions Plaintiff had attempted to reach out to DeRidder to inform him of his whereabouts, but his calls had not been returned. *Id.*

In October 2022, DeRidder requested that Plaintiff visit his job sites. RSGD ¶ 51. Plaintiff testified that he was the only estimator who actually visited job sites twice each month. Pl. Depo. 51:23-52:12. According to Plaintiff, when he asked DeRidder why he was being asked to do this, DeRidder replied that "some people didn't think [Plaintiff] [was] at work or doing [his] job." *Id.* 53:5-23.

Plaintiff argues that his negative performance reviews were pretextual and unsupported by valid concerns about his job performance. Most notably, Plaintiff submits an unsigned declaration from DeRidder, in which DeRidder states that "[a]round October of 2022 [he] was requested by Denice Hollenbeck, the person in charge of HR in Corona to give Mr. Killebrew a poor review, notwithstanding that his performance was more than satisfactory." DeRidder Decl. ¶ 8.[7] In response, ANI presented several text messages between DeRidder and Fidone dated August 19, 2022, September 26, 2022, December 1, 2022, and December 6, 2022, in which DeRidder expressed discontent with Plaintiff's work performance. *See* ECF 46-1.

On March 6, 2023, Plaintiff received formal counseling. RSGD ¶ 63. The formal counseling letter, from that same date, stated that Plaintiff was expected to bid on 15-20 new projects a month. *Id.* ¶ 64. ANI asserts that Plaintiff never bid on more than 10 projects per month between October 2022 and January 2023—the counseling letter, which Plaintiff signed, states as much. *Id.* ¶ 65. Plaintiff, however, disputes this, stating in his declaration that, in 2022, "Mark Morris decided that pricing change orders would be considered as bids." Unsigned Pl. Decl. ¶ 10. The formal counseling letter also referenced an instance of neglect to attend to an agreement issue and ignoring directions from Fidone.

[7] ANI argues that this amounts to inadmissible hearsay. ECF 46-4 ¶ 6. The Court addresses the admissibility of DeRidder's declaration below.

RSGD ¶ 66-67. Furthermore, after being counseled for not answering or returning his supervisors' phone calls, and asked about this failure, Plaintiff stated that he would not call back his supervisor if it was after 5:00 p.m. *Id.* ¶ 68.

On March 9, 2023, Plaintiff emailed ANI HR Director Sandra Hauger. ECF 41-3 at 8. Plaintiff complained that he did not receive commissions for projects he has managed even though that was not "the guideline for commissions in the past" and other project managers in his office were paid commissions for managing projects that other people sold. *Id.* Plaintiff also complained in the email that he had been subjected to harassment since the retirement of Sirls, his father-in-law; that he had been asked to sign a document stating that it was his fault if a contractor was unwilling to issue "outstanding change orders;" that there was a new requirement that he bid 20 projects a month, which might require him to work 60 to 80 hours a week, something he could not do; that he believed these issues started because he asked about his commission payments; and that Fidone had told field crews that Sirls was going to start another business doing insulation and was helping ANI's competitors. *Id.* Plaintiff asked in the email if his alleged mistreatment was a result of this alleged suspicion about Sirls' plans. *Id.* Plaintiff reaffirmed this in his deposition, testifying that he believed he received negative reviews because ANI was worried that Plaintiff was helping steal clients for Sirls. RSGD ¶ 84.

On March 17, 2023, ANI terminated Plaintiff. *Id.* ¶ 69. Although Plaintiff claims the reason for his termination was that he continued to pursue the issue of unpaid commissions, it is undisputed that ANI presented him with a severance agreement that identified other individuals whom ANI also terminated as part of a broader reduction in force ("RIF"). *Id.* ¶ 70; ECF 37-4 at 116 ("Selection of employees in the Decisional Unit for separation of employment in conjunction with the RIF was based on the reduction in the amount of work available . . . ."). Plaintiff did not sign the severance agreement. RSGD ¶¶ 70-71. In support of Plaintiff's contention that ANI's stated reason for termination was fabricated, Plaintiff points to the close proximity between his March 9,

2023, email complaints to HR Director Hauger and his March 17, 2023, termination. *Id.*; ECF 41-3 at 8.

**B. Procedural History**

On November 12, 2023, Plaintiff filed this case against Defendants Topbuild, Inc., ANI, Coast Insulation, and Does 1 through 10 in Riverside County Superior Court.[8] ECF 2-2. On November 29, 2023, ANI removed the case to federal court. ECF 2. Plaintiff brings three claims for: (1) wrongful termination; (2) breach of contract; and (3) fraud. ECF 2-2. Plaintiff also seeks punitive damages "to be determined by the evidence of fraud." *Id.* ANI filed its Answer on December 6, 2023. ECF 10.

On September 19, 2024, Plaintiff filed a Motion to Allow Deposition of Michael Fidone, with hearing set for October 17, 2024. ECF 32. Plaintiff subsequently withdrew this Motion. ECF 38. On October 10, 2024, ANI filed the instant Motion for Summary Judgment. ECF 42. On October 28, 2024, Plaintiff refiled a Motion to Allow Deposition of Michael Fidone. ECF 42.

Plaintiff filed his Opposition to the Motion for Summary Judgment on October 24, 2024. ECF 41. ANI filed its Reply on October 31, 2024. ECF 46. In its Reply, ANI point out that the declarations Plaintiff submitted in support of his Opposition were not signed

---

[8] On April 8, 2025, the Court issued an Order to Show Cause as to why this action should not be dismissed for lack of prosecution as to Defendants Topbuild Inc. and Coast Insulation. ECF 77. Plaintiff failed to respond and comply with the Court's order. Counsel for ANI subsequently entered a change of contact information form and notice of withdrawal of counsel form indicating that counsel of record represents "Topbuild Inc. et al." *See* ECF 80, 81. It is not entirely clear to the Court whether ANI's counsel represents all three defendants. Nevertheless, Plaintiff has not provided proof that it timely served Topbuild Inc. or Coast Insulation in compliance with Federal Rule of Civil Procedure 4(m), which requires that a defendant be served within 90 days after the complaint is filed. Absent a showing of good cause, an action may be dismissed for failure to timely serve. Fed. R. Civ. P. 4(m). The Court may also dismiss an action for failure to prosecute or comply with court orders. *Id.* 41(b). Here, again, Plaintiff did not respond to the Court's Order to Show Cause. Thus, for all these reasons, the Court hereby **DISMISSES** Defendants Topbuild, Inc. and Coast Insulation from this action.

under penalty of perjury. ECF 46 at 10 (citing 28 U.S.C. § 1746). As a result, Plaintiff, without leave of Court, filed amended sworn declarations.[9] ECF 55-57. Plaintiff did not, however, file a sworn version of the DeRidder declaration. *See* ECF 41-2, 55-1, 57. Plaintiff also filed, without leave of Court, objections to evidence attached to ANI's Reply. ECF 54. ANI responded to Plaintiff's objections and filed objections to the late-filed declarations. ECF 59.

On November 25, 2024, the Court held a hearing on both Motions. ECF 61. The Court denied the Motion to Allow Deposition at the hearing for lack of good cause to amend the scheduling order under Federal Rule of Civil Procedure 16(b). The Court found that Plaintiff had not acted diligently in seeking to depose Fidone during the discovery period. The Court now rules on the Motion for Summary Judgment.

## II. <u>LEGAL STANDARDS</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate where the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Entry of judgment is appropriate "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Material facts are those which may affect the outcome of the case." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *In re Caneva*, 550 F.3d 755, 760 (9th Cir. 2008); *Anderson*, 477 U.S. at 248. "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Long*, 442 F.3d at 1185; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

---

[9] The Amended Declaration of Carl Killebrew removed certain factual allegations about Plaintiff's employment and added factual assertions related to Plaintiff's review of job cost reports and his complaints about the same. *Compare* ECF 41-3 *with* ECF 55. The Amended Declaration of Kenneth Sirls added assertions regarding "potentially fraudulent activities taking place at the Corona division of ANI" and conversations he had regarding concerns related to job cost reports. *Compare* ECF 41-4 *with* ECF 56.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). Where the moving party does not bear the burden of proof at trial, it need only show that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met this initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (en banc). The court must grant summary judgment for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255); *Groh v. Ramirez*, 540 U.S. 551, 562 (2004). However, "facts must be viewed in the light most favorable to the nonmoving party only if" the dispute as to those facts is "genuine." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). A plaintiff's claims do not survive summary judgment where merely a "scintilla of evidence" supports them. *Anderson*, 477 U.S. at 252. Rather, "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (requiring more than a "metaphysical doubt" to establish a genuine dispute of material fact).

## III. DISCUSSION

ANI moves for summary judgment on each of Plaintiff's three claims. ECF 37. The Court addresses the parties' evidentiary disputes before examining each of Plaintiff's claims.

**A. Evidentiary Issues**

***1. Plaintiff's Late-Filed Declarations and Objections***

Federal Rule of Civil Procedure 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may: (1) give an opportunity to properly support or address the fact[.]" Fed. R. Civ. P. 56(e)(1). This includes by supplementing "an affidavit or declaration filed in support of or in opposition to a motion for summary judgment." *Atchley v. Pepperidge Farm*, No. CV-04-0452-FVS, 2008 WL 2074035, at *7 (E.D. Wash. May 14, 2008). Moreover, a nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex*, 477 U.S. at 324.

The Court accepts Plaintiff's late-filed declarations to the extent that they overlap with the previously filed, unsigned declarations. But to the extent that the declarations include any new information—information that ANI would not have had the opportunity to review before filing its Reply—the Court excludes that information in ruling on the instant Motion. *Stoff v. Wells Fargo Bank, N.A.*, No. 321CV00793BENKSC, 2021 WL 5449036, at *15 (S.D. Cal. Nov. 22, 2021) ("Where a party presents new evidence . . . after the submission of a reply brief, the district court should decline consideration of the new evidence unless it provides the [adverse] party an opportunity to respond to such evidence.").

Plaintiff did not file a sworn version of the DeRidder Declaration. "An affidavit or declaration used to . . . oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Only sworn affidavits—or unsworn declarations that are, *inter alia*, subscribed under penalty of perjury, pursuant 28 U.S.C. § 1746—satisfy the requirement of Rule 56(c)(4)." *Young v. Allstate Co.*, 662 F. Supp. 3d 1066, 1072 (C.D. Cal. 2023) (citing *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) and *Silverman v. Mendiburu*, 785 F. App'x 460 (9th Cir. 2019)). Here, unlike the other late-filed declarations, no version of the DeRidder

Declaration submitted to this Court was sworn or subscribed under penalty of perjury. ECF 44-2; ECF 55-1; ECF 57. Nor does DeRidder's declaration contain other indicia of truthfulness, such as "the signatures of Notary Publics who attest that the affidavits were sworn before them." *Integrated Sports Media, Inc. v. Canseco*, No. CV 10-7392 RSWL AJWX, 2012 WL 631851, at *1 (C.D. Cal. Feb. 27, 2012). Thus, Plaintiff cannot rely on DeRidder's declaration to satisfy his summary judgment burden. *See Nadler v. Nature's Way Prods., LLC*, No. CV 13-00100-TJH (OPx), 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015); *Mejia v. Gomez*, No. 218CV01735CASGJS, 2019 WL 4865016, at *3 (C.D. Cal. Sept. 6, 2019), *report and recommendation adopted*, No. 218CV01735CASGJS, 2019 WL 4860932 (C.D. Cal. Oct. 1, 2019) ("[U]nsworn declarations not signed under penalty of perjury do not constitute admissible evidence properly considered in ruling on a motion for summary judgment.").

***2. ANI's New Evidence Submitted on Reply***

On Reply, ANI submitted text messages between Dave DeRidder and Michael Fidone, in which DeRidder expressed discontent with Plaintiff's work performance. *See* ECF 46-1. Plaintiff objected to this evidence, arguing that it was improper new evidence offered on reply. *See* ECF 54.

"[R]eply briefs are limited in scope to matters either raised by the opposition or unforeseen at the time of the original motion." *Burnham v. City of Rohnert Park*, No. C 92-1439, 1992 WL 672965, at *1 n.2 (N.D. Cal. May 18, 1992) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)). Here, however, the evidence submitted in connection with ANI's Reply does not raise new arguments. Rather, it responds to the DeRidder Declaration that Plaintiff submitted with his Opposition. Although the Court will not consider the DeRidder Declaration in connection with this Motion for the reasons explained above, that does not change the fact that ANI's submitted documents "respond directly to [Plaintiff's] allegations made in his opposition brief," and the Court may "properly consider this rebuttal evidence even though it was offered for the first time in [the] reply brief." *United States v. Taibi*, No. 10-CV-2250 JLS, 2012 WL 553143, at *4

(S.D. Cal. Feb. 21, 2012). The Court therefore accepts and considers this additional evidence in ruling on the Motion for Summary Judgment. *See Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810, 827 n.18 (C.D. Cal. 2005) ("defendants' reply brief and supporting materials do not raise new matters and should not be stricken").

**B. Wrongful Termination**

ANI argues that it is entitled to summary judgment on Plaintiff's claim for wrongful termination in violation of public policy because Plaintiff fails to articulate any public policy that ANI violated by terminating his employment, and ANI nevertheless terminated Plaintiff for permissible business reasons. ECF 37-1 at 18-19.

"California law recognizes a claim for wrongful termination in violation of a public policy reflected in a statute or constitutional provision." *Day v. Sears Holding Corp.*, 930 F. Supp. 2d 1146, 1189 (C.D. Cal. 2013). "[C]ourts have recognized that an employer's traditional broad authority to discharge an at-will employee 'may be limited by statute . . . or by considerations of public policy.'" *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 172 (1980) (citations omitted). To prove a claim for wrongful termination in violation of public policy, a plaintiff must show that (1) he was employed by the defendant; (2) the defendant discharged the plaintiff; (3) the alleged violation of public policy was a motivating reason for the discharge; and (4) the discharge harmed the plaintiff. *Haney v. Aramark Unif. Servs. Inc.*, 121 Cal. App. 4th 623, 641 (2004). The public policy implicated "must be (1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Fruend v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003) (quoting *City of Moorpark v. Super. Ct.*, 18 Cal. 4th 1143, 1159 (1998)).

First, Plaintiff argues, without any explanation, that his termination violates the public policy articulated by the Sarbanes-Oxley legislation, which forbids an employer from firing an employee in retaliation for the employee's protected activity. ECF 41 at 5-6, 8. But Sarbanes-Oxley specifically "prohibits publicly traded companies from

retaliating against employees who report what they reasonably believe to be instances of criminal fraud or securities law violations." *Murray v. UBS Secs., LLC*, 601 U.S. 23, 27 (2024) (citing 15 U.S.C. § 1514A). Plaintiff does not claim to have reported an instance of criminal fraud or securities law violation, nor does he otherwise allege that he was fired for participating in the protected whistleblower activity covered by Sarbanes-Oxley. 15 U.S.C. § 1514A. Indeed, Plaintiff concedes that this case "is not based on the Sarbanes-Oxley statute," but argues that the legislation nevertheless "comprise[s] a part of public policy." ECF 41 at 6. Because Plaintiff concedes Sarbanes-Oxley does not apply to his case, Plaintiff cannot use the public policy articulated therein to support his wrongful termination claim.

Second, Plaintiff also appears to argue that he was wrongfully terminated in violation of the public policy expressed in Title VII of the Civil Rights Act.[10] *Id.* at 13-14. Although Plaintiff does not directly cite to this statute in his argument, he does cite to *Kama v. Mayorkas*, 107 F. 4th 154 (9th Cir. 2024), which discusses Title VII employment retaliation claims. Here, Plaintiff's theory is that ANI terminated Plaintiff in retaliation for questioning the sufficiency of his commissions. ECF 41 at 13-14. ANI argues that Plaintiff does not articulate a public policy that ANI violated, but even if he did, it cannot be held liable for wrongful termination because it terminated Plaintiff for undisputed performance deficiencies—a permissible business reason. ECF 37-1 at 19; ECF 46 at 12-17.

Claims for wrongful termination based on retaliation are "analyzed under the three-prong burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)[.]" *Santillan v. USA Waste of Cal., Inc.*, 853 F.3d 1035, 1042 (9th Cir. 2017); *see*

---

[10] Plaintiff includes this argument under a section of his opposition brief attempting to address his breach of contract claim, arguing that he may bring a breach of contract claim despite his at-will employment status because "[w]hen the termination violates public policy, the at-will employee cannot be terminated unless a valid reason exists." ECF 41 at 13. In so arguing, Plaintiff appears to be trying to shoe-horn a wrongful termination claim argument into his breach of contract claim. The Court therefore considers this argument where it may be properly raised, in connection with Plaintiff's wrongful termination claim.

*also Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1112, 1118 (9th Cir. 2011). Under the first prong of the *McDonnell Douglas* framework, the plaintiff must establish a *prima facie* case that he was wrongfully terminated under the public policy theory articulated by Plaintiff. *See Santillan*, 853 F.3d at 1042. If Plaintiff "establishes a *prima facie* case, there is a 'presumption of discrimination,'" *Santillan*, 853 F.3d at 1042 (quoting *Reid v. Google, Inc.*, 50 Cal. 4th 512, 520, n.2 (2010)), and the burden shifts to the defendant to rebut the presumption "by producing admissible evidence that it had a legitimate . . . reason for its adverse employment action," *id.* (citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355-56). If the defendant satisfies its burden, then the plaintiff must show that the reason advanced by the defendant was pretextual. *Id.* (citing *Reid*, 50 Cal. 4th at 520 n.2). "At summary judgment, Plaintiff's burden is to produce specific and substantial evidence of pretext, sufficient to overcome the employer's stated reasons. *Quesada v. Atrium Hosp. LP*, No. 222CV06143SVWMAA, 2023 WL 3727707, at *6 (C.D. Cal. Apr. 26, 2023) (citing *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001)). The parties' arguments center on whether Plaintiff has submitted sufficient evidence to show that ANI's proffered reasons for firing Plaintiff—*i.e.*, poor performance as part of a reduction in force—were pretextual.

ANI argues that it is undisputed that Plaintiff was put on a PIP in September 2022, which reflected concerns about Plaintiff's performance and warned Plaintiff that if he did not significantly improve, ANI may terminate his employment. ECF 46 at 13–14. The evidence further reflects that Plaintiff's supervisors discussed concerns regarding Plaintiff's poor performance, ECF 46-1, and that on one occasion Plaintiff told his supervisors he was going to the dentist when he in fact went to Disneyland. RSGD ¶ 48. ANI also submitted evidence reflecting that Plaintiff's performance did not satisfactorily improve following his placement on the PIP. *Id.* ¶¶ 63–68. This evidence is sufficient to carry ANI's burden of establishing a nonretaliatory justification for Plaintiff's termination. *Aparicio v. Amerigas Propane, Inc.*, No. CV187306PSGJEMX, 2019 WL 8647730, at *6

(C.D. Cal. Dec. 17, 2019) ("[P]oor job performance constitutes a legitimate, nonretaliatory reason for termination . . . .").

In response, Plaintiff relies on evidence showing that he contemporaneously disputed the accuracy of these purported performance issues. For example, when Plaintiff was placed on the PIP in September 2022, Plaintiff entered a comment responding to ANI's asserted reasons for the PIP, and disputing the accuracy of the information presented therein: he wrote that "[i]n the years I have been with this company all of my reviews have been great." ECF 37-3 at 11. Plaintiff's comment also asserted that he did not receive any guidelines governing his performance expectations, that he exceeded sales targets, and that the number of bids he had submitted was inaccurately reported. *Id.* Other evidence suggests that reviews of Plaintiff's performance was not uniformly negative—in an August 2022 document setting forth the "Goals & Expectations" for Plaintiff, submitted as evidence by ANI authored by DeRidder, "observations" of Plaintiff included that he was "[w]ell organized" and "proficient with insulation take-offs." ECF 37-3 at 15. Plaintiff testified he was the only employee being asked to visit a job site once or twice a month. *See* Pl. Depo. 53:5-23.

Plaintiff also points to the temporal proximity between Plaintiff's complaints to Fidone, and then to HR Director Hauger, as demonstrating that the "real reason" he was terminated was because "he would not stop pursuing payment of his commissions," rather than poor performance. ECF 41 at 13. "Temporal proximity can support both a *prima facie* case of retaliation and a showing of pretext." *Kama*, 107 F.4th at 1069 (citing *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731–32 (9th Cir. 1986). "However, the inquiry is fact-specific and depends on both the degree of proximity and what, if any, other evidence supports an inference of pretext." *Id.* at 1059–60 (citing *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003)). Plaintiff first complained to Fidone about his lower-than-expected commission in August 2022. RSGD ¶ 81. Plaintiff continued to inquire about his commissions after identifying false costs, and Fidone represented that Plaintiff was denied commissions because Plaintiff was not the primary generator of the jobs for which

he sought commissions. *Id.* ¶ 74. In addition, on March 9, 2023, Plaintiff emailed HR Director Hauger and stated that he perceived Fidone to be annoyed when Plaintiff continued to bring up the false costs issue. ECF 41-3 at 6-7; RSGD ¶ 69. Plaintiff was terminated eight days later, on March 17, 2023. RSGD ¶ 69.

The Court concludes that viewing this evidence in the light most favorable to Plaintiff, Plaintiff has not carried his burden of setting forth specific and substantial evidence rebutting ANI's legitimate justification for terminating him. To the extent that Plaintiff points to DeRidder's email as evidence of positive feedback, "[t]he mere existence of a positive performance review . . . does not raise triable issues concerning the fact that a performance-based nondiscriminatory and nonretaliatory reason for adverse employment action is pretextual." *Guyton v. Novo Nordisk, Inc.*, 151 F. Supp. 3d 1057, 1087 (C.D. Cal. 2015); *see also Pottenger v. Potlatch Corp.*, 329 F.3d 740, 746 (9th Cir.2003) (holding that "positive comments in [plaintiff's] performance review" did not create a genuine dispute as to pretext); *Herman v. Sec'y of Dep't of Treasury*, No. C-92-2755 DLJ, 1994 WL 519555, at *7 (N.D. Cal. Sept. 14, 1994) ("Pretext is not established by virtue of the fact that an employee has, in the past, received some favorable evaluation or comments."). And Plaintiff's own views about his performance being satisfactory are similarly insufficient. *Olaniyi v. Wilke*, No. CV1700932DSFPJWX, 2019 WL 5188375, at *4 (C.D. Cal. Sept. 26, 2019) ("Plaintiff's self-assessment is not sufficient to meet his burden of showing that he performed his work satisfactorily, particularly given the documented, negative feedback he received.").[11]

The Court further concludes that the temporal proximity between Plaintiff's complaints and his termination is insufficient to establish pretext. As the Ninth Circuit explained in *Kama*, "when temporal proximity cuts both ways—*i.e.*, an adverse action

[11] Plaintiff also relies on the DeRidder Declaration as evidence that the poor performance reviews were manufactured. As explained above, however, DeRidder's unsworn declaration is not admissible evidence that the Court may consider on this Motion. *See Young*, 662 F. Supp. 3d at 1072.

follows on the heels of *both* a protected activity *and* an independent reason for adverse action—it might not be enough standing alone to establish pretext." *Kama*, 107 F.4th at 1060. Here, although Plaintiff's termination came shortly after his email to HR, it also came on the heels of his being placed on a PIP as well as a broader reduction in force at ANI. *See* ECF 37-4 at 116 (identifying other employees selected for separation in connection with RIF). Thus, the temporal proximity is not dispositive of pretext. *See Block v. Soli*, 436 F. App'x 777, 779 (9th Cir. 2011); *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1069–70 (9th Cir.2003) (acknowledging that a proximity of nine days in itself may not be sufficient evidence of pretext). Plaintiff's temporal proximity evidence is also called into question by the undisputed fact that Plaintiff initially lodged his complaints with Fidone almost seven months before his termination. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("[I]n order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression." (quotation marks omitted)); *Neely v. Boeing Co.*, No. C16-1791-JCC, 2019 WL 2178648, at *7 (W.D. Wash. May 20, 2019) (determining causal connection not established by adverse employment action occurring seven months after internal complaint and five months after complaint to the EEOC).

For these reasons, Plaintiff has failed to show that triable issues of fact remain as to whether the decision to terminate him was retaliatory. Summary judgment on Plaintiff's wrongful termination claim is **GRANTED**.[12]

**C. Breach of Contract**

***1. Claims Based on Incidents Prior to May 26, 2022***

ANI argues that Plaintiff cannot maintain claims against ANI for breach of contract or fraud based on conduct prior to May 26, 2022, because Plaintiff executed the release agreement with ANI, releasing ANI from any claims against it prior to that date, in

---

[12] Because the Court concludes that Plaintiff's wrongful termination claim fails on its merits, it does not reach ANI's alternative argument that Plaintiff's litigation conduct justifies dismissal.

exchange for $30,000, which was a payment made "in addition to his normal compensation." ECF 37 at 3-4; ECF 37-1 (citing RSGD ¶ 41). The Court agrees that the release precludes Plaintiff from asserting claims that arose prior to May 26, 2022. *Id.*

Paragraph two of the agreement provides that, in signing the agreement, Plaintiff recognizes

> that this is a one-time extraordinary payment separate from and in addition to your normal compensation (i.e., base salary and/or commission plan, if applicable). You will continue to be employed as a Hybrid-Production/Sales reporting to Mark Morris, Regional Manager, until a new Division Manager is appointed. Your annual compensation structure will remain the same, and you will be paid according to ANI's normal payroll procedures.

ECF 37-4 at 99.

Paragraph four of the agreement further states that Plaintiff will receive a one-time extraordinary payment of $30,000, separate from and in addition to his normal compensation, in consideration for:

> (1) your review of and reaffirmation of your agreement to the terms of your February 27, 2018 Non-Solicitation and Confidentiality Agreement and February 27, 2018 Proprietary and Confidential Information Agreement and (2) your waiver and release of any and all employment-related claims, claims of retaliation, claims based on breach of contract, defamation, intentional infliction of emotional distress, tort, personal injury, invasion of privacy, violation of public policy, negligence or any common law, statutory, or other claims relating to employment with ANI through the date signed below[.]

ECF 37-4 at 99.

Plaintiff argues that this agreement is ineffective to release claims based on violations prior to May 26, 2022, because the language in the agreement is conflicting: the second paragraph provides that Plaintiff will receive a payment separate from his normal

compensation, while the fourth paragraph states that Plaintiff is waiving his claims related to his normal compensation, including his commission. ECF 41 at 9-10.

Plaintiff's reasoning is circular—in essence, Plaintiff argues that it is never possible for a one-time payment to constitute valid consideration for a release of claims related to wages. But that is not the law. Plaintiff appears to be invoking California Labor Code § 206.5, which "prohibits employers from requiring their employees to release claims for wages due unless payment of those wages has been made." *Ortega v. Zones, Inc.*, No. CV 21-9659 PA (MAAX), 2022 WL 17080174 (C.D. Cal. Aug. 15, 2022) (citing *Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1584 (2009)). Thus, "in a dispute over wages the employer may not withhold wages concededly due to coerce settlement of the disputed balance." *Reid v. Overland Machined Prods.*, 55 Cal.2d 203, 207 (1961). But "[w]hen a bona fide dispute exists, the disputed amounts are not 'due,' and the bona fide dispute can be voluntarily settled with a release and a payment—even if the payment is for an amount less than the total wages claimed by the employee." *Madrigal v. Tommy Bahama Grp., Inc.*, No. CV 09-08924 SJO MANX, 2010 WL 4384235, at *3 (C.D. Cal. Oct. 18, 2010) (quoting *Watkins*, 172 Cal. App. 4th at 1587).

ANI submits that the $30,000 settlement payment, combined with an additional $7,00 bonus that Plaintiff was paid, fully compensated Plaintiff for any commissions that Plaintiff could have possibly earned. ECF 36-1 at 14 n.5; RSGD ¶¶ 41–44. Plaintiff testified that when Sirls asked him if $30,000 would make him "happy" and "whole again," Plaintiff answered affirmatively and said "[y]eah, I would take $30,000." Pl. Depo. 22:2-5. Although Plaintiff also testified that he believed he was "owed a little more," he understood that by accepting the payments, he would be settling the purportedly unpaid commissions. *Id.* 22:9-11. On this record, there is a bona fide dispute as to the amounts in unpaid commissions owed to Plaintiff, and any remaining amount Plaintiff claims to be entitled to is not "concededly due." Consequently, the release purporting to waive all claims arising related to unpaid commissions predating the release is valid and enforceable. *See Watkins*, 172 Cal. App. 4th at 1587.

Because there is no genuine dispute that the release is valid and enforceable, summary judgment on Plaintiff's breach of contract claim based on incidents prior to May 26, 2022, is **GRANTED**. *See Reynov v. ADP Claims Servs. Grp., Inc.*, No. C 06-2056-CW, 2007 WL 5307977, at *4 (N.D. Cal. Apr. 30, 2007) (granting summary judgment where release of claims related wages was legally enforceable); *see also Salsman v. Access Sys. Americas, Inc.*, 489 F. App'x 227 (9th Cir. 2013) ("The district court properly granted summary judgment because [plaintiff] failed to raise a genuine dispute of material fact as to whether the release agreement that [plaintiff] signed was valid.").

***2. Claims After May 26, 2022***

As ANI points out, Plaintiff's theory regarding breach of contract lacks clarity, but it is ostensibly based on Plaintiff's claim that he was contractually entitled to receive commissions for certain projects but did not receive such compensation. ECF 41 at 11–13. Plaintiff references commissions for projects that he managed along with Sirls, as well as commissions that were reduced based on improper expenses. To state a claim for breach of contract under California law, a plaintiff must establish: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (2011).

ANI argues that there was no written contract between the parties entitling Plaintiff to the incentive compensation he claims he is owed. ECF 37-1 at 20-21. Plaintiff disagrees, arguing that when he began employment with ANI, he received a commission chart, which both parties submit into the record. ECF 41 at 11; ECF 41-3 at 10; ECF 37-4 at 119.[13] The chart is not, however, attached to any contractual agreement, and the chart itself contains no language purporting to create contractual obligations owed by either

[13] The chart sets forth the commission rates based on the direct margin of a project, with commission beginning at a 25% direct margin. ECF 37-4 at 119. For example, where the direct margin is 25%, the commission rate is 1.0%; where the direct margin is 52%, the commission rate is 1.2%; where the direct margin is 70%, the commission rate is 3.0%. *Id.*

party. And Plaintiff does not identify any term in any contractual agreement obligating ANI to distribute commissions according to a determined calculation. Plaintiff instead claims that contracts "need not be written" and insists that the chart establishes commissions that he was entitled to collect. ECF 41 at 11. But Plaintiff does not identify any promise by ANI to pay commissions according to that chart for projects that he—admittedly—did not sell. Rather, Plaintiff points to his own statements and deposition testimony that he believed this to be company policy and that he was aware of other instances of project managers receiving commissions for projects they did not sell. But Plaintiff "needed to present *evidence* that [ANI] made promises in order to overcome a motion for summary judgment," and he has failed to do so here. *Bristol SL Holdings, Inc. v. CIGNA Health Life Ins. Co.*, No. SACV19709PSGADSX, 2020 WL 8410441, at *5 (C.D. Cal. Dec. 2, 2020). Plaintiff's self-serving statements about his own understanding of ANI's policy or practice does not create a genuine dispute that an enforceable promise exists. *Villiarimo*, 281 F.3d at 1061 (recognizing that "uncorroborated and self-serving testimony" may be insufficient to create genuine issue to survive summary judgment).

Because there is no genuine issue as to whether ANI owed Plaintiff any contractual duty to pay the commission he claims, summary judgment as to Plaintiff's breach of contract claim is **GRANTED**.[14]

**D. Fraud**

ANI argues that Plaintiff's unsubstantiated suspicions of fraud "fail to meet the high bar required to establish a fraud claim," because Plaintiff does not identify any individual at ANI who made allegedly false representations or when these purportedly false representations occurred. *Id.* at 24–25. To establish a claim for fraud under California law, a plaintiff must show: (1) a misrepresentation (false representation, concealment, or

---

[14] Because the Court finds the first element—the existence of a contract—dispositive, it does not reach ANI's alternative argument that Plaintiff's damages are too speculative.

non-disclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).

The Court agrees with ANI that there is not sufficient evidence in the record to support a fraud claim. Plaintiff's fraud claim is based on the false costs that Plaintiff alleges someone at ANI added to his job cost reports to make his projects appear less profitable and reduce his commissions on those projects. *See* ECF 41 at 16–23. Plaintiff argues that Fidone represented to him that he would have those false costs removed but did not remove them. But there is no evidence in the record that Fidone's statement was made with knowledge of falsity or intent to defraud. Nor is there any evidence in the record to support that Plaintiff relied on Fidone's statement to take or not take certain actions, with resulting damage.

Plaintiff argues that the "sheer number of the false costs shows that they were not accidents" and were made with the intent to deceive. ECF 41 at 18; *see also* Sirls Decl. ¶¶ 11-12 (claiming to have identified "$30,000 in unpaid commissions"). But Plaintiff did not present any evidence of the job cost reports or identify the specific costs he believes were falsely included in those reports. Moreover, Plaintiff has not presented evidence to show that, absent any alleged false costs, his jobs would have been sufficiently profitable such that unpaid commissions were owed to him. *See supra* n.9. Arguments based merely on "conjecture or speculation are insufficient" to survive summary judgment. *McIndoe v. Huntington Ingalls, Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) (internal citation and quotation omitted).

Accordingly, summary judgment on Plaintiff's fraud claims is **GRANTED**.

### E. Punitive Damages

ANI argues that Plaintiff's claims for punitive damages fail because "there is a total absence of evidence from which 'oppression, fraud, or malice' reasonably could be inferred." ECF 37-1. In California, an employer may be held liable for punitive damages where it, or its managing agent, acted with malice, oppression, or fraud. Cal. Civ. Code § 3294(b). Conduct in knowing violation of the law constitutes "malice" and "oppression."

*Flyer's Body Shop v. Ticor Title Ins. Co.*, 185 Cal. App. 3d 1149, 1154 (1986). "In the usual case, the question of whether the defendant's conduct will support an award of punitive damages is for the trier of fact, 'since the degree of punishment depends on the peculiar circumstances of each case.'" *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1053 (2009) (quoting *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981)).

In his Complaint, Plaintiff sought punitive damages based on his fraud claim. *See* ECF 2-2 at 10. Because the Court grants summary judgment on Plaintiff's fraud claim, ANI is similarly entitled to summary judgment on Plaintiff's request for punitive damages. *Contento v. Mitchell*, 28 Cal. App. 3d 356, 357 (1972) ("It is a well-settled rule that there can be no award of punitive damages without a finding of actual damages."). Moreover, because Plaintiff in his Complaint specifically limited his request for punitive damages to his fraud claim, Plaintiff cannot now argue, as he attempts to, that he is entitled to punitive damages based on his other claims. *See Brandwein v. Cal. Bd. of Osteopathic Examiners*, 708 F.2d 1466, 1475 (9th Cir. 1983) (holding that an issue not included in a complaint is not properly before the district court for judgment, absent amendment to the complaint).

Accordingly, summary judgment on Plaintiff's punitive damages claim is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Defendant ANI's Motion for Summary Judgment is **GRANTED**. Defendant shall file a Proposed Judgment within three (3) days of this Order.

**IT IS SO ORDERED.**

Dated: September 19, 2025

MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE